IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JENNIFER HACKWORTH                                                                   PLAINTIFF

V.                         NO. 3:20-cv-00241-ERE

COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

## ORDER

I. **Introduction:**

On September 20, 2017, Jennifer Hackworth filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income benefits. (Tr. at 15). In both applications, she alleged disability beginning on November 15, 2015. *Id*. An administrative law judge (ALJ) denied her applications in a decision dated February 18, 2020. (Tr. at 29-30). The Appeals Council denied her request for review on July 22, 2020. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Hackworth has requested judicial review. For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

II. **The Commissioner's Decision:**

The ALJ noted that Ms. Hackworth, who was born on August 16, 1980 (Tr.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

at 28), met the insured status requirements (had sufficient earnings quarters) through December 31, 2020. (Tr. at 15). At step one of the required five-step analysis, the ALJ found that she had not engaged in substantial gainful activity since the alleged onset date of November 15, 2015.[2] (Tr. at 17). At step two, the ALJ determined that Ms. Hackworth has the following severe impairments: obesity, degenerative changes of the lumbar and cervical spine, fibromyalgia, neuropathy, migraine headaches, tendonitis of the left shoulder status post repair, left carpal and cubital tunnel syndrome, anxiety disorder, and depressive disorder. *Id.*

After finding that Ms. Hackworth's impairments did not meet or equal a listed impairment (Tr. at 18-22), the ALJ determined that she had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with exceptions: (1) she can no more than occasionally climb ramps and stairs; (2) she can no more than occasionally stoop, kneel, crouch, and crawl; (3) she can no more than occasionally reach overhead; (5) she can no more than occasionally be exposed to extreme cold, loud noise, and vibration; (6) she can frequently handle; (7) she can

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work23; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

never climb ladders, ropes, or scaffolds; (8) she can never be exposed to unprotected heights; (9) she can understand and remember simple instructions and sustain attention and concentration to complete simple tasks with regular breaks every two hours; (10) she can interact as needed with supervisors and coworkers and can no more than occasionally interact with the public; and (11) she can adapt to routine work conditions and occasional workplace changes. (Tr. at 22).

The ALJ next found that Ms. Hackworth was unable to perform any of her past relevant work. (Tr. at 28). At step five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Hackworth's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, such as table worker, addresser, and document preparer. (Tr. at 29). Therefore, the ALJ found that Ms. Hackworth was not disabled. *Id.*

### III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

    B.   Ms. Hackworth's Arguments on Appeal

Ms. Hackworth contends that the evidence supporting the ALJ's decision is less than substantial. She argues that: (1) the RFC did not fully incorporate her limitations; and (2) the ALJ did not resolve a conflict between the *Dictionary of Occupational Titles* (DOT) and the VE's testimony at step five. After reviewing the

record as a whole, the Court finds support for Ms. Hackworth's second argument.

While the ALJ found that Ms. Hackworth had multiple severe impairments, the Court will limit its discussion to problems arising from her left shoulder impairment.[3]

On August 24, 2017, Ms. Hackworth began seeing Dr. Brandon Byrd at Dickson Orthopedics for left shoulder pain. (Tr. at 579-581). He began treating her conservatively, and she felt some improvement in her pain levels. *Id*.

However, on September 15, 2017, Dr. Byrd noted that Ms. Hackworth was still having "a lot of pain, weakness and stiffness to her [left] shoulder." (Tr. at 563-565). On October 11, 2017, Dr. Byrd performed a left shoulder arthroscopy with extensive debridement and biceps tenotomy of the rotator cuff and subacromial bursa. (Tr. at 551-552). With physical therapy, steroid injections, and pain medications, Ms. Hackworth's shoulder pain improved somewhat, but an MRI of the left shoulder taken on June 11, 2018 showed a tear of the long head of the biceps tendon. (Tr. at 1109-1110). Ms. Hackworth's shoulder condition improved with more physical therapy and medication, and she did not discuss her shoulder with Dr. Byrd at 2019 appointments; instead, Dr. Byrd focused on carpal and cubital tunnel

---

[3] *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered [plaintiff's] arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

syndrome. (Tr. at 1058-1065).

On a function report dated April 19, 2018, Ms. Hackworth stated that she was unable to raise her shoulder over her head to wash or comb her hair and could not lift more than 5 pounds. (Tr. at 332-336). She also reported that pain interfered with her daily activities. *Id*. At the administrative hearing on June 11, 2019, Ms. Hackworth testified that steroid injections in her left shoulder did not fully relieve the pain, and she reiterated that she could not reach above her head. (Tr. at 45-49).

The ALJ credited the objective evidence of a shoulder injury, as well as Ms. Hackworth's subjective complaints, and limited her to no more than occasional overhead reaching in the RFC. (Tr. at 22). At step five, the VE identified jobs that Ms. Hackworth could perform, all of which require frequent, rather than occasional, reaching: (1) table worker, DOT 739.697-182; (2) addresser, DOT 209.587-010; and (3) document preparer, DOT 249.587.010. Doc. No. 13 at 50-51; *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO). Clearly, this presents a conflict.

Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007). In a case

very similar factually to this case, a district court held that an RFC limitation to occasional overhead reaching conflicts with DOT jobs requiring frequent reaching. *Humphrey v. Berryhill*, No. 4:18-cv-00190-ACL, 2019 U.S. Dist. LEXIS 50243 *18 (E.D. Mo. March 26, 2019).

The ALJ in this case asked the VE if his testimony was consistent with the DOT, and the VE said: "Yes, sir. All of it except the overhead reaching and I had to rely on past experience for that." (Tr. at 54). The ALJ did not seek clarification, and the VE did not explain how his experience informed him or whether he had seen the identified jobs actually performed in a work setting. Due to this unresolved conflict, the ALJ did not meet his burden at step five.[4]

## IV. Conclusion:

It is not the task of this Court to review the evidence and make an independent

---

[4] *See Stanton v. Comm'r, SSA*, 899 F.3d 555, 560 (8th Cir. 2018) (in the face of a step five conflict, "the expert's statement that his opinion was 'consistent with the DOT and [his] experience' was not a sufficient explanation, because it did not address whether or why the expert's experience provided a basis to overcome an apparent conflict with the [DOT]"); *Humphrey* v. Berryhill, No. 4L18-cv-00190-ACL, 2019 U.S. Dist. LEXIS 50243 at *17 (E.D. Mo. March 26, 2019) (remand was proper in the face of a DOT conflict where the VE provided "no insight into the issue"); *Eldridge v. SSA*, No. 3:17-cv-00308-JTR (E.D. Ark., November 6, 2018) (while the ALJ asked multiple questions of the VE regarding the reaching conflict, the VE testimony's still did not provide insight or explain the conflict), *Montoya v. SSA*, No. 3:18-cv-00091-JTK (E.D. Ark., June 13, 2019) (in the face of reaching conflict, the VE's response that he relied on his "experience" to address conflict was insufficient); see instead, *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014 ) (the ALJ resolved the apparent conflict by extensively questioning the VE, who cited to a professional journal to support her testimony).

decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ failed to obtain an adequate explanation from the VE to resolve the conflict between his testimony and the DOT.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 29th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE